**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13-cv-00825-RM

JULIA ANNE MASLANIK,

    Plaintiff,

v.

KATHLEEN SEBELIUS, Secretary of Health and Human Services,

    Defendant.

---

**ORDER**

---

### I.  INTRODUCTION

Julia Anne Maslanik (Plaintiff) brings this matter before the court seeking judicial review of a decision by the Secretary of the U.S. Department of Health and Human Services (Secretary) denying Plaintiff's requested reimbursement for dental services she received from various providers in 2010. (ECF No.1). Plaintiff, an enrollee in Kaiser's Senior Advantage Health Maintenance Organization (HMO), a Medicare Advantage plan (MA), incurred the contested expenses for dental services to remediate, repair and replace the damage to her teeth and their supporting structures that Plaintiff sustained when she fell while suffering a *grand mal* seizure on December 30, 2009. (ECF Nos. 15, p.7; 16, p.7).

### II  PROCEDURAL HISTORY

This case has a protracted procedural history which began in late December, 2010, when Kaiser Foundation Health Plan of Colorado (Kaiser) denied Plaintiff's requested reimbursement

for dental services that she had received from January through November of 2010. (ECF No.12, pp.175-186). Plaintiff requested reconsideration of Kaiser's denial on April 30, 2011. (ECF No.12, p.196). Kaiser affirmed its original denial on June 3, 2011. (ECF No. 12, p.173). The next day, Kaiser sent Plaintiff's file to Maximus Federal Services, an independent review entity. (ECRF No.12, pp.201-203). After consideration, Maximus affirmed Kaiser's decision on June 29, 2011. (ECF No. 12, pp.170-71).

Plaintiff requested a hearing before an Administrative Law Judge (ALJ) on July 6, 2011. (ECF No. 12, p.127). An ALJ conducted a telephone hearing on November 17, 2011. (ECF No. 12, pp.223-60). At the hearing Plaintiff presented testimony, was represented by counsel and accompanied by her family members, some of whom also testified. (ECF No.12, pp.225-28). An Appeals Analyst and the Chief of Appeals and Risk Management for Kaiser in Colorado represented Kaiser. (ECF No. 12, p.229). The ALJ issued a favorable decision for Plaintiff on February 21, 2012, finding that Kaiser's coverage extended beyond the requirements of Medicare. The ALJ therefore ordered Kaiser to reimburse Plaintiff for her dental expenses. (ECF No.12, pp.40-48). Kaiser sought review of the ALJ's decision by the Medicare Appeals Council (Council) on April 18, 2012. (ECF No. 12, pp.29-37).

The Council reversed the ALJ's decision finding "that the MA plan at issue does not provide dental benefits beyond the parameters of coverage in accordance with original Medicare requirements for dental services. The Medical Advantage Organization (MAO) is not required to cover or reimburse the enrollee for, the dental services the enrollee received on various dates in 2010." (ECF No. 12, pp.1-14). Plaintiff now seeks federal court review of that final decision pursuant to 42 U.S.C. § 1395w-22(g)(5). (ECF No.1, p.3).

### III   ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ noted that Medicare does not generally cover dental services unless the beneficiary's situation falls under an exception. (ECF No. 12, p.46). The ALJ noted that Medicare does not cover services in connection with the care, treatment, filling, *removal* or *replacement* of teeth, or structures directly supporting the teeth. (ECF No. 12, p.47)(emphasis in original). The ALJ found that the dental services received by the Plaintiff did not fall under the limited exceptions to the dental service exclusion and she therefore did not qualify for coverage under Medicare. (ECF No. 12, p.47).

However, the ALJ noted that although page 35 of the Kaiser Evidence of Coverage stated that it covered items and services in accordance with Medicare Rules, Kaiser's coverage did provide coverage for dental services above and beyond what is covered by Medicare. (ECF No.12, p.47). As a result, the ALJ found Kaiser's terms regarding dental coverage were vague and ambiguous. *Id.* He therefore construed the Evidence of Coverage (EOC) terms against Kaiser, the drafting party. (ECF No.12, pp.47-48).

Because Plaintiff received her dental services as a direct consequence of experiencing a seizure, the ALJ found that her dental services "hardly fall within the common understanding of the word routine." (ECF No.12, p.48). Although Plaintiff did not receive her dental services from a hospital or a network provider, the ALJ found that "inconsequential" because Kaiser does provide that "cosmetic surgery or procedures are covered if they are needed as a result of accidental injury or to correct disfigurement resulting from an injury . . . ." *Id.* The ALJ therefore ordered Kaiser to reimburse Plaintiff for the dental services she received from various dentists in 2010. *Id.*

## IV. MEDICARE APPEALS COUNCIL DECISION

The Council noted that as the authorities provided and the ALJ's decision acknowledged, Medicare generally does not cover dental services. (ECF No.12, p.9). The record before the Council contained evidence submitted by the treating dentists indicating that the services provided were "dental" and provided "in connection with the care, treatment, filing, removal or replacement of teeth or structures directly supporting teeth." *Id.* Kaiser also argued that the services in question were dental services and the Council noted that Plaintiff did not dispute that point. *Id.*

The Council found that Plaintiff's dental procedures were not performed in an inpatient setting and so were not hospital related costs. *Id.* The Council noted that the services provided were not part of other covered procedures, did not encompass specific exceptions that would implicate Kaiser coverage, or involve the narrow coverage afforded for wiring of teeth for a fractured jaw. *Id.*

The Council therefore agreed with the ALJ's finding that there was no exception to the general rule of non-coverage that applied under the undisputed facts of the case. (ECF No.12, pp.9-10). The Council further noted that it agreed with Plaintiff and the ALJ that Kaiser may provide coverage for additional or supplemental services beyond those covered under the original Medicare. (ECF No.12, p.10).

However, the Council assigned error to the ALJ's determination that Kaiser provided coverage beyond Medicare and that the language in its EOC referring to "routine" and "non-routine" dental services was confusing and ambiguous, which led him to resolve that ambiguity in Plaintiff's favor. (ECF No.12, p.12). Specifically, the Council found no extended coverage. The Council also disagreed with the ALJ's ambiguity determination and found that any potential

4

ambiguity was clarified when the terms were read in the context of both the basic rule (that the plan follows the Medicare coverage rules for dental services), and the EOC section on Additional Benefits which did not list any dental coverage. (ECF NO.12, pp.12-13).

Additionally, the Council found the ALJ's consideration of the EOC's language concerning cosmetic procedures was misplaced and concluded that "an enrollee in this situation could have inquired as to what, if any, dental benefits the plan would consider covering" if Plaintiff had any questions about her coverage. (ECF No.12, p.13).

The Council and the Secretary therefore reversed the ALJ's decision and found that the Kaiser plan did not provide dental benefits beyond the parameters of coverage accorded by the original Medicare requirements for dental services and was therefore not required to reimburse or cover the dental services plaintiff received at various dates in 2010. (ECF No.12, p.14).

## IV DISCUSSION

**1. Standard of Review:**

Judicial review of the Secretary's final decision is available as provided in 42 U.S.C. § 405(g) for old age and disability claims arising under Title II of the Social Security Act. *Heckler v. Ringer,* 466 U.S. 602, 605 (1984); see also 42 U.S.C. § 1395ff(b)(1)(A). Under Section405(g), a district court's review of the Secretary's finding that a claimant is not entitled to Medicare benefits, is limited to whether the Secretary's finding is supported by substantial evidence. *Chipman v. Shalala,* 90 F.3d 421, 422 (10th Cir. 1996).

Looking at the record as a whole, the Secretary's decision may be overturned only if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence or contrary to law. *Chipman v. Shalala,* 90 F.3d 421, 422 (10th Cir. 1996). The question before the court is therefore not whether the court would have reached a different result based on the record but,

whether there is substantial evidence showing that the Secretary was justified in her decision. *Andrade v. Sec. of Health and Human Services,* 985 F.2d 1045, 1047 (10th Cir. 1993). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Via Christi Regional Med. Ctr, Inc., v. Leavitt,* 509 F.3d 1259, 1271 (10th Cir. 2007).

**2.     Medicare Advantage:**

The Medicare statute was enacted in 1965 and is a federal health insurance program primarily benefitting those 65 years of age or older. See 42 U.S.C. §§ 1395-1395kkk-1. The Medicare program is divided into four major components: Parts A, B, C, and D. *Id.*

Part A of Medicare provides for hospital insurance services, including inpatient hospital services, post-hospital extended care services, home health services, and hospice care. See 42 U.S.C. § 1395d(a). Part B is a voluntary program that provides supplemental benefits to Medicare participants to cover the costs of, among other things, home health services, physician services, and outpatient physical therapy services. See 42 U.S.C. § 1395k. Part C, also known as the Medicare + Choice (M+C) program, allows eligible participants to opt out of the traditional Part A fee-for-service system and obtain various benefits through MAOs, which receive a fixed payment from the United States for each enrollee. See 42 U.S.C. §§1395w-21, w-29. Part D of the program provides a prescription drug benefit program. See 42 U.S.C. §§1395w-101 *et seq.*

An MAO may be a coordinated care plan or health maintenance organization (HMO), a medical savings account or a private fee-for-service plan. See 42 U.S.C. §1395w-21(a)(2). All MAOs must provide at least minimum basic benefits covered by Medicare Part A and B. See 42 U.S.C. § 1395w-22(a)(1). They may as an incentive to encourage enrollment, provide

supplemental benefits.  See 42 U.S.C. § 1395w-22(a)(3).  These benefits must be explained in a standardized form or Evidence of Coverage (EOC), models of which are available on government websites.  See 42 U.S.C. § 1395w-22(c)(1)(B).  The MAO may alter the model by adding information regarding their additional benefits and rules for accessing benefits and are required to provide this information to enrollees upon enrollment and annually thereafter.  Id.

Part B of Medicare, the program under which Plaintiff seeks reimbursement in this case, is financed from premium payments by the enrollees together with contributions from the federal government.  See 42 U.S.C. §1395j.  Plaintiff is enrolled in Kaiser's Senior Advantage HMO which requires its participants to obtain referrals to see network providers as a means of controlling utilization.  See 42 C.F.R. § 422.4(a).  The instant matter arises from Plaintiff's request for reimbursement of her non-network dental work done subsequent to her seizure and fall.

In order to establish entitlement to Medicare coverage, Plaintiff must show that her medical procedures were (1) medically necessary and (2) fall within the coverage guidelines.  See 42 U.S.C. § 1395y(a)(1)(A).  The Secretary in this instance disputes both the medical necessity as defined by Kaiser's EOC, of Plaintiff's dental services as well as Plaintiff's requested coverage and reimbursement for her unauthorized dental services rendered by non-network providers.  (ECF No. 16).

As a general rule, Medicare does not provide coverage for dental services.  See, e.g., 42 U.S.C. §1395y(a)(12) ("no payment may be made under part A or part B of [Medicare] for any expenses incurred for items or services . . . where such expenses are for services in connection with the care, treatment, filling, removal, or replacement of teeth or structures directly supporting teeth"); 42 C.F.R. § 411.15(i)(noting that excluded services include "[d]ental services in

connection with the care, treatment, filling, removal, or replacement of teeth, or structures directly supporting the teeth"). However, Medicare does have exceptions to the general prohibition against coverage for dental services.

For example, dental services provided in a hospital setting in connection with an "underlying medical condition" may be covered under Medicare Part A. See 42 U.S.C. § 1395y(a)(12)("payment may be made under Part A of this subchapter in the case of inpatient hospital services in connection with the provision of such dental services if the individual, because of his underlying medical condition and clinical status or because of the severity of the dental procedure, requires hospitalization in connection with the provision of such services"); *Chipman*, 90 F.3d at 422-23. Other exceptions allow beneficiaries to receive benefits for the extraction of teeth to prepare the jaw for radiation treatments of neoplastic disease, or for the receipt of benefits for oral examinations performed in a hospital before a beneficiary undergoes surgery for a kidney transplant, or if an otherwise non-covered procedure or service is performed by a dentist as incident to and as an integral part of a covered procedure or service performed by the dentist. There is no dispute that Plaintiff's dental care does not fall under any of these narrow exceptions.

3. **Plaintiff's Kaiser Senior Advantage:**

At all times relevant to this matter, Plaintiff was enrolled in Kaiser Senior Advantage HMO. (See e.g., ECF No.12, p.41). Plaintiff does not dispute that she had been a member for over 12 years or that she received a copy of Kaiser's EOC which includes *inter alia* basic rules that must be followed for coverage which include that care must be medically necessary and coordinated through the enrollee's primary care provider (PCP). (ECF No.12, EOC, Ch.3, p.23)

Medically necessary is defined in Kaiser's EOC as: "[d]rugs, services or supplies that are proper and needed for diagnosis or treatment of your medical condition; are used for the diagnosis, direct care and treatment of your medical condition; meet the standards of good medical practice in the local community; and are not mainly for your convenience or that or your doctor." (ECF No.12, EOC, p.163). The EOC also stipulates that "referrals from your PCP are not required for emergency care" but in "most cases, care you get from a non-network provider . . . will not be covered." (ECF No.12, EOC, Ch.3, p.24) In this instance Kaiser paid for the non-network emergency room medical care that Plaintiff received to treat and stabilize her emergent post-traumatic condition however, denied reimbursement for costs incurred by her non-network dental services which she received in the ensuing months. (ECF No. 21, p.18).

Plaintiff argues that the replacement of her teeth were included in the EOC explanation that "[a]fter the emergency is over you are entitled to follow-up care to be sure your condition continues to be stable." (ECF No. 21, p.21). However nothing in the record supports Plaintiff's argument that replacement of her teeth was required to continue her condition's stability. Further Plaintiff's argument ignores the EOC's clear statement that when the emergency is over "we will generally cover additional care *only* if you get the additional care in one of two ways: You go to a network provider to get the additional care *or* the additional care you get is considered "urgently needed care" and "[i]n most situation, if you are in our plan's service area, we will cover urgently needed care *only* if you get this care from a network provider." (ECF No. 12, EOC, pp.28-29 (emphasis in original)).

Plaintiff contends that she did comply with Kaiser's referral requirement because she received a referral for her dental care from the non-network Emergency Room physicians. (ECF No. 21, p.18). However, the record before the court does not support Plaintiff's contention that

9

this referral complied with the EOC requirement that "[i]t is very important that your provider call us to get authorization for post-stabilization care before you receive care from the non-network provider." (ECF No.12, EOC, p.28).

Plaintiff's contention also ignores the EOC definition of referral: "[i]n most situations, your PCP must give you approval in advance before you see other providers in our plan's network. This is called giving you a 'referral.' " (ECF No.12, EOC, p.36). Similarly unpersuasive is Plaintiff's reliance on a misquote to support her argument that only "GENERALLY medical care must be provided from a network provider" (ECF 21, p.19), when the EOC actually states " [i]n most cases, care you receive from a non-network provider will not be covered." (ECF No.12, EOC, Ch.4, Sec. 2.1, p.35).

Finally Plaintiff argues that her dental work is "eligible for reimbursement solely by reference to the Cosmetic/accidental injury exception." (ECF No. 21, p.10 (quotations omitted)). The Secretary acknowledges that "while Plaintiff's appearance may have benefitted from replacing her lost teeth this does not automatically equate to satisfying the medical necessity requirement." (ECF No.16, p.30). However, the Secretary (as stated in the Council decision), found that "the MAO's language concerning the exclusion of coverage for cosmetic surgery and cosmetic procedures (EOC, page 56), succinctly restates the Medicare guidelines concerning the general rule of exclusion of coverage for cosmetic procedures. . . ." and, the "ALJ's consideration of the EOC's language concerning cosmetic procedures was misplaced in this case" because "applicable authorities are those pertaining to dental services." (ECF No. 12, p.11).

I agree. Even if Plaintiff's non-routine dental services were covered (and the record does not establish that they were), the EOC states that "[y]our provider must obtain prior authorization

from our plan." (ECF No. 12, EOC, p.41). Nothing in the record indicates that either the non-network provider or Plaintiff, a long-term MAO enrollee, attempted to get prior authorization for her subsequent non-network dental work.

As for whether Kaiser's EOC extended coverage, by contract, beyond that provided by Medicare, I agree with the Council that it did not. At the very least, the analysis and review of EOC provisions set forth at pages 9 through 11 of the Council's decision (EFC No.21, pp.11-13), demonstrates that the Council was neither arbitrary nor capricious and had substantial evidence in support of its decision.

I therefore find that administrative record contains substantial evidence to support the Council's conclusion that Plaintiff's dental services received from various non-network providers in 2010 were beyond the parameters of Medicare coverage and Kaiser's EOC. I also find that Kaiser was therefore not required to cover or reimburse Plaintiff. Finally I find that the Council's decision is supported by substantial evidence in the record and free of legal error.

## V. CONCLUSION

For the foregoing reasons the Secretary's final decision as expressed in the Council's decision dated January 24, 2013, is hereby AFFIRMED

IT IS SO ORDERED

DATED this 16th day of November, 2015.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge